1
2
3
4
5
6           UNITED STATES DISTRICT COURT
7           EASTERN DISTRICT OF WASHINGTON
8
9   TIM MONG,                              No. 1:15-CV-03050-JTR
10              Plaintiff,
11                                         ORDER GRANTING PLAINTIFF'S
                v.                         MOTION FOR SUMMARY
12                                         JUDGMENT
13  CAROLYN W. COLVIN,
14  Commissioner of Social Security,
15              Defendant.
16

17          **BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF

18  No. 13, 14.  Attorney D. James Tree represents Timothy C. Mong (Plaintiff);

19  Special Assistant United States Attorney Alexis L. Toma represents the

20  Commissioner of Social Security (Defendant).  The parties have consented to

21  proceed before a magistrate judge.  ECF No. 7.  After reviewing the administrative

22  record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion

23  for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment;

24  and **REMANDS** the matter to the Commissioner for additional proceedings

25  pursuant to 42 U.S.C. § 405(g).

26                          **JURISDICTION**

27          Plaintiff filed applications for Supplemental Security Income (SSI) and

28  Disability Insurance Benefits (DIB) on October 13, 2011, alleging disability since

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

July 1, 2008, due to possible obesity, back pain, diabetes, high blood pressure, high cholesterol, depression, and weakness in his legs. Tr. 302-314, 344, 348. The applications were denied initially and upon reconsideration. Tr. 144-161, 164-177. Administrative Law Judge (ALJ) Ilene Sloan held a hearing on June 20, 2013, at which Plaintiff, represented by counsel, and vocational expert, Frederick Cutler, testified. Tr. 33-67. The ALJ issued an unfavorable decision on October 24, 2013. Tr. 16-27. The Appeals Council denied review on January 27, 2015. Tr. 1-5. The ALJ's October 24, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on March 27, 2015. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 38 years old at the alleged date of onset, July 1, 2008. Tr. 302. Plaintiff completed the tenth grade in 1987. Tr. 349. Plaintiff alleges that he stopped working on July 1, 2008, because of his conditions. Tr. 348. Earnings records show that Plaintiff worked in 2008 and 2009. Tr. 322. Plaintiff has work history as a cook, fast food cook, and merchandizer. Tr. 349, 355.

On May 1, 2013, Plaintiff was examined by Jeffrey R. Merrill, M.D. Tr. 530-545. Plaintiff reported he had been uninsured for the past five months, resulting in a lack of prescription medication. Tr. 531. His blood glucose level was 415, his A1C was greater than fourteen, and he had trace ketones in his urine. Tr. 532. Plaintiff weighed 201.5 pounds with a BMI of 25.18, and Dr. Merrill noted that his abdominal wall "is largely excess skin folds from his obviously severe former level of obesity." Tr. 533. During the examination, Dr. Merrill noted that Plaintiff was "ill appearing," and he had "an absolutely massive [right] hemiscrotum, 20 cm+, with no way to determine the presence of the [right] testis."

ORDER GRANTING PLAINTIFF'S MOTION . . . - 2

*Id.* Dr. Merrill referred to this hernia as "mammoth," and indicated that "[r]epair will be difficult but will be necessary." Tr. 530. Following the examination, Dr. Merrill opined that Plaintiff was unable to meet the demands of sedentary work and estimated the current limitation would persist for six months with treatment. Tr. 543.

At the hearing, Plaintiff testified that he was currently taking insulin, but had not been able to see his doctor to restart six or seven medications he was on prior to losing his insurance. Tr. 42. Additionally, the record does not show whether Plaintiff received any additional care for his hernia.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law *de novo*, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.

*Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On October 24, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 1, 2008, the alleged date of onset.[1] Tr. 18.

_____

[1]Plaintiff amended his alleged onset date to September 1, 2011, through a letter from counsel on July 8, 2013. Tr. 407. Despite this letter, the ALJ made a determination from July 1, 2008, to October 24, 2013. Tr. 27. The Court's review is limited to the final decision of the Commissioner. 42 U.S.C. § 405(g). Here the ALJ's determination is the final decision of the Commissioner. Therefore, the

ORDER GRANTING PLAINTIFF'S MOTION . . . - 4

At step two, the ALJ determined Plaintiff had the following severe impairments:  focal spondylosis at L1-L2 and L5-S1, degenerative joint disease of the hips, mood disorder not otherwise specified, and diabetes mellitus type II.  Tr. 18-19.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 19-21.

At step four, the ALJ assessed Plaintiff's residual function capacity (RFC) and determined he could perform a range of light work with the following limitations:

> The claimant can occasionally climb ladders, ropes, and scaffolds and can frequently stoop.  He can climb ramps and stairs, balance, kneel, crouch and crawl unlimitedly.  The claimant can perform work that avoids even moderate exposure to hazards such as unprotected heights and moving machinery.  The claimant can understand, remember, and carry out simple instructions as well as some detailed instructions. The claimant is able to maintain concentration in two-hour intervals before requiring a 15-minute break to refocus.

Tr. 21.  The ALJ determined that Plaintiff had past relevant work as a newspaper delivery driver, home health aide, baker helping, short order cook, and kitchen helper.  Tr. 25.  The ALJ found Plaintiff was able to perform his past relevant work as a short order cook.  Tr. 24.

In the alternative to a step four determination denying benefits, the ALJ made a step five determination that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff

_____

Court will review the determination from July 1, 2008, through the date of the ALJ's decision.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 5

could perform, including the jobs of fast food worker, cashier II and assembly.  Tr. 26.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 1, 2008, through October 24, 2013, the date of the ALJ's decision.  Tr. 27.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) improperly rejecting a portion of Dr. Merrill's opinion; (2) improperly considering Plaintiff's failure to follow prescribe treatment; and (3) failing to properly consider Plaintiff's testimony about the severity of his symptoms.

## DISCUSSION

### A.   Weight given Dr. Merrill's Opinion

Plaintiff argues that the ALJ erred through an implicit rejection of Dr. Merrill's opinion that Plaintiff was unable to meet the demands of sedentary work.  ECF No. 13 at 15-20.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) nonexamining physicians who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)).  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons.  *Lester*, 81 F.2d at 830.  When an examining physician's opinion is contradicted by

another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician. *Id*. at 830-831.

Here, the ALJ implicitly rejected the opinion of Dr. Merrill. *See infra.* The implied reasons for rejecting the opinion failed to meet even the lesser standard of specific and legitimate. Therefore, these reasons were not legally sufficient.

On May 1, 2013, Dr. Merrill evaluated Plaintiff and opined that he was unable to meet the demands of sedentary work, stating: "[h]e is weak and actively compromised by out of control diabetes and probably has been for months. He will definitely improve with treatment through this will not be an overnight project." Tr. 530, 543. Dr. Merrill estimated that the work limitations would persist for six months with available medical treatment. Tr. 543. Dr. Merrill recommended immediate access to insulin and primary care and consult with general surgery and urology for repair of the hernia. *Id*. Dr. Merrill stated that he was only an examining physician, but due to the "imminent danger of slipping into [diabetes ketoacidosis]," he felt obligated to provide some prescriptions. Tr. 530. The ALJ gave "great weight" to this opinion:

> He opined the claimant was unable to meet the demands of sedentary work. He opined the claimant's level of limitations would last six months with appropriate treatment. He noted the need for immediate access to insulin and primary care. I give Dr. Merrill's opinion great weight, specifically his opinion that the claimant's impairment would last no more than six months. This is consistent with contemporaneous treatment records showing the claimant's diabetes was not well controlled. Ex. 13F. He opined the claimant would "definitely improve" with treatment. Ex. 13F/1. Dr. Merrill's evaluation highlights the need for the claimant to comply with treatment. It is consistent with the medical evidence showing the claimant's diabetes was not under control due to non-compliance.

Tr. 24.

Despite the great weight given to this opinion, the residual functional capacity determined by the ALJ is for a limited range of light work. Tr. 21. If a

ORDER GRANTING PLAINTIFF'S MOTION . . . - 7

residual functional capacity assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.  S.S.R. 96-8p.  Here, the ALJ failed to explain why she did not adopt Dr. Merrill's opinion that Plaintiff was unable to meet the demands of sedentary work.  Through the ALJ's reference to Plaintiff's non-compliance, she implies that six months have passed and Plaintiff's limitations had improved with treatment as predicted by Dr. Merrill.  But the record fails to support this implication.  There is no evaluation after Dr. Merrill's opinion.  The record does contain a May 29, 2013, Physical Residual Functional Capacity Assessment completed by single decisionmaker, Carol Fundanet, who found Plaintiff "presently capable of less than sed[entary]" residual functional capacity assessment based on Dr. Merrill's opinion.  Tr. 546-553.  The record is void of any evidence showing that Plaintiff received treatment for his diabetes or underwent surgery for his hernia.  At the June hearing, Plaintiff testified that he was waiting to see his doctor to talk about returning to his medications.  Tr. 42-43.  Therefore, the ALJ's implicit determination on October of 2013 that Plaintiff's impairments improved with treatment is not supported by the record.  Therefore, the ALJ failed to adequately address why her residual functional capacity assessment differs with Dr. Merrill's opinion.

The ALJ's statements concerning Dr. Merrill's opinions could also be read to imply that any of Plaintiff's limitations resulting from his failure to follow prescribed treatment should not be considered in forming the residual functional capacity assessment.  Generally, impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for benefits.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  However, a failure to follow a course of treatment may be excused, if the claimant's noncompliance is attributable to his mental illness, *Molina*, 674 F.3d at 1114, or if the claimant cannot afford the treatment, *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).  Here, the ALJ failed to consider the reasons for

Plaintiff's failure to follow prescribed treatment.

The record contains several references that address whether Plaintiff's limited intellect or lack of funds affected his ability to follow prescribed treatment. On September 23, 2011, Plaintiff presented to the emergency room with his glucose levels at 400. Tr. 499. He reported dropping his insulin vial and stepping on it. Tr. 498. Additionally, he had missed his appointment on the Tuesday prior. *Id.* On November 21, 2011, Plaintiff presented to the emergency room with a glucose level of 700. Tr. 494. He had missed an appointment with his primary care provider and his insurance would not cover another appointment until the following month. *Id.* He was out of insulin and needed a refill of syringes. *Id.* In December 2011, Jay M. Toews, Ed.D., found that Plaintiff "appears to function in the Low Average range of intelligence," and diagnosed Plaintiff with a history of attention deficit disorder, in full remission, a mood disorder, and passive-submissive traits. Tr. 442-443. On July 17, 2012, Plaintiff was seen at the emergency room with his glucose at 600. Tr. 479. At that time, he was no longer able to see his primary care doctor because he could not pay the $25.00 missed appointment fee, his glucometer was broken, and he was out of his metformin. *Id.* On May 1, 2013, Plaintiff had a glucose level of 415 and an A1C of greater than 14. Tr. 532. He had lost his insurance coverage and was without medications for five months. Tr. 531. Dr. Merrill noted that he thought Plaintiff's difficulty with managing his diabetes went beyond access to care. Tr. 530. In his Function Report, Plaintiff alleged that he needed reminders to take medication and to attend appointments. Tr. 396.

Considering the ALJ's lack of explanation as to why he did not include limitations from Dr. Merrill's opinion in the residual functional capacity assessment, remand is necessary for the ALJ to properly address Dr. Merrill's opinion and Plaintiff's resulting residual functional capacity assessment. Additional medical evidence is also necessary to show what, if any, treatment

Plaintiff received after May 2013 and if the treatment improved his residual functional capacity assessment from that opined by Dr. Merrill.

**B.    Plaintiff's Failure to Follow Prescribed Treatment**

Plaintiff argues that the ALJ denied his claim based on the premise that his ability to work would be restored if he had followed prescribed treatment.  ECF No. 13 at 13-15.  Specifically, Plaintiff asserts that the ALJ failed to meet the requirements of S.S.R. 82-59, which delineates the circumstances in which an ALJ can deny benefits on the basis that the claimant had failed to follow prescribed treatment.  *Id.*

The procedures mandated by S.S.R. 82-59 only apply to claimants who would otherwise be disabled within the meaning of the Social Security Act. *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  Here, the ALJ did not determine that Plaintiff would have otherwise been disabled but for his failure to follow prescribed treatment.  Thus, S.S.R. 82-59 does not apply.

However, Plaintiff's claim that portions of the ALJ's decision is premised on the finding that Plaintiff failed to follow prescribed treatment is accurate.  Plaintiff specifically argues this point in reference to the ALJ's treatment of Dr. Merrill's opinion.  ECF No. 13 at 14.  This argument has essentially been addressed above. To the extend the ALJ may have additionally relied on the premise that Plaintiff failed to follow prescribed treatment, the ALJ is instructed to consider the potential reasons for Plaintiff's failure on remand.  The Ninth Circuit has clearly held that "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds."  *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).  Likewise, the Ninth Circuit has found that "we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions."  *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

1    **C.**     **Credibility**

2         Plaintiff contests the ALJ's adverse credibility determination. ECF No. 13

3   at 9-13.

4         Considering it is necessary that this case be remanded to readdress Dr.

5   Merrill's opinion and consider the reasons for Plaintiff's failure to follow

6   prescribed treatment, the ALJ is instructed to also consider Plaintiff's credibility on

7   remand.

8                          **REMEDY**

9         The decision whether to remand for further proceedings or reverse and

10   award benefits is within the discretion of the district court. *McAllister v. Sullivan*,

11   888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate

12   where "no useful purpose would be served by further administrative proceedings,

13   or where the record has been thoroughly developed," *Varney v. Secretary of Health*

14   *& Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused

15   by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280

16   (9th Cir. 1990). *See also Garrison*, 759 F.3d at 1021 (noting that a district court

17   may abuse its discretion not to remand for benefits when all of these conditions are

18   met). This policy is based on the "need to expedite disability claims." *Varney*,

19   859 F.2d at 1401. But where there are outstanding issues that must be resolved

20   before a determination can be made, and it is not clear from the record that the ALJ

21   would be required to find a claimant disabled if all the evidence were properly

22   evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96

23   (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

24         In this case, it is not clear from the record that the ALJ would be required to

25   find Plaintiff disabled if all the evidence were properly evaluated. Further

26   proceedings are necessary for the ALJ to consider and weigh the opinion of Dr.

27   Merrill, to consider reasons for why Plaintiff failed to follow prescribed treatment,

28   and to address Plaintiff's credibility regarding his symptom reporting. The ALJ

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

will also need to form a new residual functional capacity determination after supplementing the record and eliciting testimony from a medical expert.

## CONCLUSION

Accordingly, **IT IS ORDERED**:

1.      Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.      Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED March 30, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE